# UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

UNITED STATES,

*Appellee,*

*v.*

BRIAN R. WALSHE,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of Massachusetts
(Case No. 1:18-cr-10399-WGY), Judge William G. Young

## PRINCIPAL BRIEF OF BRIAN WALSHE

Tracy A. Miner
Megan A. Siddall
Miner Siddall LLP
101 Federal Street, Suite 650
Boston, MA  02110
Telephone:  (617) 202-5890
Fax:  (617) 202-5893
Email:  tminer@msdefenders.com
Email:  msiddall@msdefenders.com

*Counsel for Appellant*
*Brian Walshe*

July 18, 2024

# Table of Contents

STATEMENT OF JURISDICTION ........................................................... 1

STATEMENT OF ISSUES .................................................................... 2

INTRODUCTION ............................................................................... 3

STATEMENT OF THE CASE ............................................................... 4

   I.  Mr. Walshe pleads guilty to a scheme to sell fake Andy Warhol paintings. ................................................................................. 4

   II.  Mr. Walshe discloses all assets in his possession in his presentencing financial affidavit. ......................................................... 5

   III.   The trial court is about to sentence Mr. Walshe to time served when his bank incorrectly questions a Treasury check it issued .......... 7

   IV.   Probation recommends an obstruction enhancement after the government alleges Mr. Walshe made materially false statements on his financial statement ...................................................................... 9

   V.  The Court adds two levels to Mr. Walshe's sentencing guidelines for obstruction of justice after the government argues Mr. Walshe did not disclose assets that belonged to his father's estate. ...................... 11

      A.   The parties agree to a stipulation of facts that the Court accepts at sentencing ...................................................................... 11

      B.   The Court adopts Probation's recommended guidelines calculation without further explanation. ......................................... 15

SUMMARY OF THE ARGUMENT ....................................................... 17

ARGUMENT ...................................................................................... 19

   I.  Standard of Review ..................................................................... 19

   II.  The government did not prove that Mr. Walshe willfully made a materially false statement on his financial affidavit. ......................... 20

A.    Remand is appropriate to give the district court an opportunity to explain the basis for its guidelines calculation. ............................22

B.    Any finding that Mr. Walshe obstructed justice is clearly erroneous. ..........................................................................................25

C.    Any alleged misstatements on Mr. Walshe's financial affidavit were not material. ............................................................................36

III.    The district court's decision will have a chilling effect on presentence investigations....................................................................39

CONCLUSION ......................................................................................40

# Table of Authorities

**Cases**

*Bryan v. United States*, 524 U.S. 184 (1998) ...........................................21

*United States v. Barker*, 80 F.4th 827 (7th Cir. 2023)............................35

*United States v. Bell*, 953 F.2d 6 (1st Cir. 1992) ....................................19

*United States v. Belletiere*, 971 F.3d 961 (3d Cir. 1992).........................37

*United States v. Carroll*, 346 F.3d 744, (7th Cir. 2003).........................37

*United States v. Dunnigan*, 507 U.S. 87 (1993) .....................................22

*United States v. Hall*, 434 F.3d 42 (1st Cir. 2006)..................................35

*United States v. Rivera-Nazario*, 68 F.4th 653 (1st Cir. 2023) ..............35

*United States v. Saccoccia*, 354 F.3d 9 (1st Cir. 2003) ...........................37

*United States v. Schneiderhan*, 404 F.3d 73 (1st Cir. 2005) ..................35

*United States v. Sicher*, 576 F.3d 64 (1st Cir. 2009) ...............................19

*United States v. Tabares*, 951 F.2d 405 (1st Cir. 1991)..........................36

*United States v. Van*, 87 F.3d 1 (1st Cir. 1996) ......................................22

*United States v. Zehrung*, 714 F.3d 628 (1st Cir. 2013) ....... 19, 20, 22, 23

**Statutes**

18 U.S.C § 1957 ........................................................................5

18 U.S.C. § 1343 .......................................................................5

18 U.S.C. § 2315 .......................................................................5

18 U.S.C. § 3231 .......................................................................1

28 U.S.C. § 1291 .......................................................................1

**Other Authorities**

U.S.S.G. § 3C1.1 ............................................................... passim

U.S.S.G. Chapter 5, Part A ......................................................8

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231.  The district court entered final judgment on February 28, 2024.  ADD1.[1]  Appellant timely appealed on March 4, 2024.  JA52.  This Court has jurisdiction under 28 U.S.C. § 1291.

---

[1] Citations prefixed with "ADD" are to the addendum to this brief; those prefixed with "JA" or "SA" are to the joint appendix and the sealed joint appendix, respectively.  Citations to "ECF" refer to pleadings filed before the district court that are not included in the appendices or addendum.

**STATEMENT OF ISSUES**

1.      Defendant Brian Walshe truthfully disclosed his assets on a financial affidavit submitted to Probation after he pled guilty to art fraud-related offenses as part of a plea agreement.  He did not disclose assets belonging to his father's estate, which Mr. Walshe had no prospect of inheriting, nor any potential liability to the estate.  Did the district court err when it increased Mr. Walshe's offense score by two levels for willful obstruction of justice, given that the stipulation of facts did not support a finding of willfulness or materiality and the Probation financial forms did not specifically ask for information relating to funds currently held on behalf of another?

# INTRODUCTION

The factual history of this case is complex but the question before this Court is narrow. The government spent a significant amount of time trying to find something – anything – that Brian Walshe was hiding during the sentencing phase of this case. And even the government was forced to admit that all but one of those efforts were for naught. The only disputed issue at sentencing was whether Mr. Walshe obstructed justice when he did not disclose assets he used to hold in his capacity as Personal Representative of his father's estate or his potential liability to the estate. Here too the government's evidence fell woefully short. Mr. Walshe made every effort to provide a complete and accurate disclosure of his assets and liabilities to Probation during its presentence investigation. He included his personal effects, his ownership in a business, and proceeds from a life insurance policy he received personally as a result of his father's death. What he did not disclose were assets that did not belong to him and that would never belong to him and that could not be used to pay any criminal financial penalties. He also did not disclose that to the extent he still had any assets that belonged to the estate, he had an obligation to turn them

over to the estate.  The district court erred in concluding that these accurate disclosures amounted to willful obstruction of justice warranting a sentencing guidelines enhancement for obstruction of justice under U.S.S.G. § 3C1.1.

## STATEMENT OF THE CASE

### I.    Mr. Walshe pleads guilty to a scheme to sell fake Andy Warhol paintings.

Brian Walshe was indicted on October 31, 2018 on charges of wire fraud, interstate transportation for a scheme to defraud, unlawful monetary transaction and possession of converted goods.  JA20.  The charges arose from Mr. Walshe's selling fake Andy Warhol paintings as real to an art gallery in California and an art consultant in France.

Mr. Walshe's father had passed away in September of 2018, the month before the indictment.  ECF No. 134 at 4.  Mr. Walshe was initially appointed Personal Representative of his father's estate.  ECF No. 134 at 4.  He was removed as Personal Representative of the estate on July 17, 2019 after a will disinheriting Mr. Walshe was filed in the probate court.  ECF No. 134 at 5.  That will was admitted by the probate court on February 10, 2020.  ECF No. 134 at 5.

On April 21, 2021, Brian Walshe entered into a plea agreement whereby he agreed to plead guilty to Count One of the Indictment charging wire fraud in violation of 18 U.S.C. § 1343, Count Two of the Indictment charging interstate transportation for a scheme to defraud, in violation of 18 U.S.C. § 2314, and Count Four charging an unlawful monetary transaction, in violation of 18 U.S.C § 1957. JA33. The U.S. Attorney agreed to dismiss Count Three, charging possession of converted goods in violation of 18 U.S.C. § 2315, at sentencing. JA33. Mr. Walshe also agreed to a restitution order of $195,000 and the value of three Warhol paintings as well as an order of forfeiture in the amount of $225,000 in United States currency and two Shadow Paintings by Andy Warhol. JA35-36. Mr. Walshe entered a guilty plea that same day. JA11-12.

## II. Mr. Walshe discloses all assets in his possession in his presentencing financial affidavit.

Mr. Walshe submitted a financial affidavit to the Probation Department during its presentence investigation which he signed under pains and penalty of perjury on May 16, 2021. SA8. The affidavit was submitted nearly two years after Mr. Walshe was removed as Personal Representative of his father's estate, on July 17, 2019. ECF No. 134 at

5.  Accordingly, when he signed the financial affidavit Mr. Walshe had no expectation of receiving any of the estate's assets.

The financial affidavit instructed Mr. Walshe to describe "your financial resources, including a complete listing of all assets you own or control as of this date and any assets you have transferred or sold since your arrest."  SA13.  The instructions went on to advise Mr. Walshe that "the assets owned, jointly owned, or controlled by an offender, and liabilities are all relevant to the court's decision regarding the ability to pay.  Your Net Worth Statement should include assets or debts that are yours alone [ ], assets or debts that are jointly [ ] held by you and a spouse or significant other, assets or debts that are held by a spouse or significant other [ ] that you enjoy the benefits of or make occasional contributions toward, and assets or debts that are held by a dependent [ ] that you enjoy the benefits of or make occasional contributions toward."  SA13.

The only question on the affidavit that references an estate is the section called "ANTICIPATED ASSETS."  SA16.  The form states that anticipated assets include "any assets you expect to receive or control from lawsuits for compensation or damages, profit sharing, pension

plans, inheritance, wills, or as an executor or administrator of any succession or estate." SA16. Mr. Walshe's response to the anticipated assets question was "none." The affidavit form does not ask about potential future liabilities.

The affidavit also includes a single section regarding "TRANSFER OF ASSETS." SA17. That section instructs Mr. Walshe to include "any assets you have transferred or sold since the date of your arrest with a cost or fair market value of more than $1000.00. Also list any assets that someone else is holding on your behalf." SA17. Mr. Walshe's response was "$40,000 inheritance from dad's estate – transferred to wife for family expenses." SA17. Mr. Walshe also indicated that the date of transfer or sale for this inheritance was 2019. SA17. He did not list any payments he made with assets of his father's estate on behalf of the estate during the time he was the Personal Representative of the estate.

## III. The trial court is about to sentence Mr. Walshe to time served when his bank incorrectly questions a Treasury check it issued.

Mr. Walshe's sentencing hearing was scheduled for October 6, 2021. JA12. On June 28, 2021, the Probation Department filed its

original Presentence Report where it calculated Mr. Walshe's Total Offense Level as 19 and his Criminal History Category as I, yielding a Sentencing Guideline Range of 30 to 37 months. Neither party filed any objection to this calculation. SA22, SA46, SA57. *See also* U.S.S.G. Chapter 5, Part A (Sentencing Table).

On September 10, 2021, the parties filed sentencing memoranda to aid the Court in sentencing. JA12. Shortly before the sentencing hearing, Mr. Walshe deposited a Treasury check from Hingham Savings Bank in partial payment of his restitution. The sentencing hearing commenced on October 6, 2021 and was continued until October 8, 2021. JA13. On that date, the Court announced its intention to sentence Mr. Walshe to a sentence of time served and three years of supervised release. JA56-57. Before the sentence was actually imposed, however, the finance department informed the Court that the Hingham Savings Bank had raised questions about whether Mr. Walshe had sufficient funds in his account to cover the Treasury check. JA81. The Court delayed imposition of the sentence to give the U.S. Attorney's Office time to investigate. JA81-82.

On December 15, 2021, the Court ordered the government to make a written submission to the Probation Officer concerning its investigation; Probation to issue a violation notice, amend the Presentence Report, take some other action, or take no action, in its discretion; and the Defendant to respond to Probation's Actions. JA14. After investigation the government concluded that Mr. Walshe did have funds in the account to cover the Treasury check and that the bank had been in error when it questioned the check. JA43-44.

## IV. Probation recommends an obstruction enhancement after the government alleges Mr. Walshe made materially false statements on his financial statement.

The government continued to investigate every aspect of Mr. Walshe's life and finances. Ultimately, it accused Mr. Walshe of providing a materially false financial statement to Probation during the presentence investigation. The government originally claimed that Mr. Walshe failed to report all assets, anticipated assets, gifts from others, and several liabilities on his financial statement. SA38.

As with the Treasury check matter, the government ultimately dropped most of its allegations regarding Mr. Walshe's financial statement. By the time of the final sentencing hearing the

government's only claim that the financial statement was false concerned Mr. Walshe's former role as executor of his father's estate. The government alleged that Mr. Walshe allegedly failed to disclose a liability he owed to his father's estate. ECF No. 178 at 3-4.

On January 7, 2022, Probation revised the PSR to add a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 based solely on the U.S. Attorney's submissions. SA57. This enhancement raised Mr. Walshe's sentencing guideline range to 37–46 months' imprisonment. SA46. Mr. Walshe timely objected to the obstruction enhancement. SA37-39.

Probation issued its Final Presentence Report on February 23, 2022 maintaining the enhancement. Probation recommended the obstruction enhancement because it alleged Mr. Walshe did not report all assets, anticipated assets, gifts from others or liabilities. SA38. In particular, Probation noted an allegation that Mr. Walshe did not disclose a transfer of assets to his wife, an allegation the government no longer maintained by the time of sentencing. SA60-61. The Final PSR was silent as to any allegation that Mr. Walshe failed to disclose assets

he allegedly controlled as Personal Representative of his father's estate or potential liabilities he had to the estate.

The parties filed supplemental sentencing memoranda on June 6, 2022 and June 7, 2022. JA15. The Court held a further hearing regarding sentencing on June 9, 2022. JA15. At that hearing, the Court determined that an evidentiary hearing was necessary as to the probate matters upon which the obstruction of justice enhancement was based. JA15.

## V.  The Court adds two levels to Mr. Walshe's sentencing guidelines for obstruction of justice after the government argues Mr. Walshe did not disclose assets that belonged to his father's estate.

On July 13, 2023, this case was transferred to Judge Young. JA16. By this time Mr. Walshe had been charged with murder in the Norfolk Superior Court. He has been detained awaiting trial since January 2023. JA46-47.

### A.  The parties agree to a stipulation of facts that the Court accepts at sentencing.

In an effort to streamline the issues for sentencing and to avoid the need for an evidentiary hearing on the obstruction of justice enhancement, the parties entered into stipulations of fact with respect to the probate matter and agreed that, based on those facts, the

sentencing judge could decide whether the obstruction of justice enhancement applied as a matter of law. The parties filed additional sentencing memoranda on February 16, 2024. JA18. The parties' Stipulation of Facts is attached to the United States sentencing memorandum as Exhibit 3. JA49.

At the final sentencing hearing the sole guidelines dispute was whether Probation correctly applied the obstruction of justice enhancement based on Mr. Walshe's statements or omissions concerning his role as Personal Representative of his father's estate. The parties filed a joint stipulation of facts regarding the estate matter and advised the Court that an evidentiary hearing was not necessary as the Court could decide the issue as a matter of law based on the stipulated facts. JA49. At sentencing the Court accepted the parties' stipulation of facts. JA93.

The stipulation of facts provides that Mr. Walshe executed a collection of forms describing his financial condition after entering his guilty plea on April 1, 2021. JA49. Those financial forms were signed under the penalty of perjury. JA49.

The parties further stipulated that Mr. Walshe's father, Thomas Walsh, died suddenly in India on September 21, 2018. JA49. In the absence of a will, Mr. Walshe applied to be and was appointed Personal Representative of the estate. JA49. The estate included a house in Hull, Massachusetts, other real estate, bank accounts, and personal property. JA49. Mr. Walshe filed documents in the probate matter estimating the value of his father's real estate at $800,000 and his personal estate at $1 million. JA49.

As Personal Representative, Mr. Walshe received assets from the estate including bank accounts. JA49. Mr. Walshe did not disclose those assets in his financial statement to Probation. JA49. Mr. Walshe also received a payment of approximately $40,000 in his personal capacity as the beneficiary of an insurance policy held by his father. JA50. The parties agreed that Mr. Walshe did disclose this $40,000 payment to Probation.

Mr. Walshe prepared to sell his father's house in Hull in 2019. JA50. However, on April 24, 2019 a friend of Mr. Walshe's father brought an action to enjoin the sale of that home. JA50. Mr. Walshe's cousin Andrew Walshe swore an affidavit stating that Mr. Walshe had

destroyed his father's original will, which disinherited him.  JA50.  Mr. Walshe denied destroying a will but did not proceed with the sale of the house.  JA50.  The equitable suit was dismissed by agreement of the parties that same day.  JA50.

However, over Mr. Walshe's objection a photograph of the will was admitted to probate.  JA50.  The photographed will provided that Mr. Walshe was not entitled to any inheritance from his father's estate.  JA50.  The probate court appointed Andrew Walshe as Personal Representative for the estate.[2]  JA50.  The property owned by the estate was ultimately sold by Andrew Walshe as Personal Representative and the proceeds went to the estate.  *See In re:  The Estate of Thomas Moorecroft Walshe, III*, Docket No. 18P2434 (Plymouth County Probate and Family Court).

The parties further stipulated that Andrew Walshe sought to have Brian Walshe provide an account of the estate from the period when he served as its Personal Representative.  JA50.  On June 9, 2022, Judge Woodlock (who was then the district judge presiding over this case)

_____

[2] Andrew Walsh was appointed Personal Representative on July 17, 2019.  ECF No. 134 at 5.

ordered Mr. Walshe to provide an inventory and accounting of the estate.  JA50.  Mr. Walshe has not done so.[3]  JA50.  Mr. Walshe also submitted an affidavit in the probate court objecting to the Petition to Render Inventory and Account, and stating that he had to take numerous steps to marshal and secure the assets of the estate, including arranging for the transport of his father's remains from India and repairing flood damage at the Hull house.  JA50.  He stated that he was in the process or organizing a full account and would file it when complete.  JA50.  Upon Andrew Walshe's motion, the probate court dismissed the petition for an inventory and account on November 7, 2023.  JA51.

## B.    The Court adopts Probation's recommended guidelines calculation without further explanation.

On February 20, 2024, the Court held a Final Sentencing Hearing. Mr. Walshe continued to object to the obstruction enhancement.  JA92. At that hearing, the Court concluded that the obstruction of justice enhancement applied.  JA99.  Before the parties' argument the district

---

[3] Mr. Walshe was ultimately advised by counsel to invoke his Fifth Amendment privilege against self-incrimination and to decline to submit the inventory and accounting.  ECF No. 177 at 3.

court confirmed that the parties "agree that based upon the stipulation and today's argument, this Court might resolve that matter. And I'm prepared to do so." JA93. After the parties' arguments the Court stated, "I've carefully reviewed all the written materials and . . . I am aided by your arguments, both of your arguments. I do conclude, pursuant to the sentencing guideline procedures, that it is appropriate to add 2 levels for obstruction of justice." JA99. The Court did not further explain its reasoning and did not make a finding of willfulness on Mr. Walshe's part or of the materiality of the undisclosed information.

The defense emphasized at sentencing that Mr. Walshe never disputed that full restitution should be ordered. JA113. Although Mr. Walshe's financial condition had deteriorated considerably due to his incarceration on the state matter, he committed to working to pay off the rest of the restitution order if he were to be acquitted in that case and able to earn a living. JA113. Mr. Walshe also agreed to have his $75,000 bail used towards restitution in addition to the $95,077.97 he had already paid. JA113, JA116 (crediting Mr. Walshe for $95,077.97 already paid towards restitution).

The Court sentenced Mr. Walshe to 37 months imprisonment, which represented the bottom of the sentencing guideline range with the obstruction of justice enhancement, followed by 3 years of supervised release.  JA115-16.[4]  The Court also ordered Mr. Walshe to pay $475,000 restitution and forfeiture.  JA116-17.  Mr. Walshe timely appealed on March 4, 2024.  JA52.

## SUMMARY OF THE ARGUMENT

The government failed to meet its burden of proving by a preponderance of the evidence that Mr. Walshe willfully obstructed justice when he omitted the assets of his father's estate in his financial disclosure to Probation or his potential liability to the estate for any remaining assets.

As an initial matter, remand is appropriate because the district court did not explain the basis for its application of the obstruction enhancement.  The court could not rely on the PSR to do so because that report said nothing about Mr. Walshe's role in the estate.  And the

---

[4] The Court ordered that the sentence be served concurrently with any state sentence that may be imposed on Mr. Walshe.  JA116.

parties' stipulated facts at sentencing did not demonstrate willful obstruction.

Even if the district court had explained its reasoning, any finding that Mr. Walshe willfully provided materially false information to Probation was clearly erroneous. In fact, Mr. Walshe made no false statement on the financial affidavit, which on its face did not ask about assets held in a representative capacity or an inheritance that Mr. Walshe knew he would not receive.

If there were any misstatements, Mr. Walshe did not make them willfully. Mr. Walshe's disclosure are wholly consistent with a reasonable reading of the financial disclosure forms.

And failure to disclose the estate's assets – which did not belong to Mr. Walshe – was not material to Probation's investigation. After all, Mr. Walshe was not free to use those assets to pay any criminal penalties and the district court could not order that those assets be seized or forfeited to satisfy any criminal judgment. The judgment in this case would have been exactly the same even had Mr. Walshe told Probation about his father's estate.

Finally, the Court should consider the deleterious effects an affirmance would have. Financial disclosures from defendants are a good thing; they allow the court to determine a defendant's ability to pay and they help the government identify potentially forfeitable assets. But if a reasonable reading of the financial disclosure form could lead to an increase in a defendant's sentencing guidelines, defense attorneys will hesitate before advising clients to participate in the financial investigation.

## ARGUMENT

## I. Standard of Review

This Court reviews a district court's guidelines interpretation de novo. *See United States v. Zehrung*, 714 F.3d 628, 631 (1st Cir. 2013); *see also United States v. Bell*, 953 F.2d 6, 7 (1st Cir. 1992). Findings of fact are reviewed for clear error. *See Zehrung*, 714 F.3d at 631. And the Court reviews a district court's "application of the guidelines to a particular case on a 'sliding scale,' with the intensity increasing the 'more law-oriented'—as opposed to 'fact-driven'—the judge's conclusion is." *See id.* (quoting *United States v. Sicher*, 576 F.3d 64, 70 & n.6 (1st Cir. 2009)).

**II.** **The government did not prove that Mr. Walshe willfully made a materially false statement on his financial affidavit.**

The government bears the burden of proving a sentencing enhancement by a preponderance of the evidence. *See Zehrung*, 714 F.3d at 629.

The sentencing guidelines provide for a 2-level increase of a defendant's offense level if the Court finds "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense." *See* U.S.S.G. § 3C1.1 (Obstructing or Impeding the Administration of Justice). An allegedly false statement is not obstruction unless it is both willful and material.

The Sentencing Commission recognized that the offense level should not be increased based on the defendant's exercise of a constitutional right, including "refusal to admit guilt or provide information to a probation officer." *See* § 3C1.1, application note 2. Where a defendant allegedly impeded an investigation by giving false

testimony or statements, the Commission cautioned that "the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." *See id.* In criminal law "a 'willful' act is one undertaken with a 'bad purpose' . . . with knowledge that his conduct was unlawful." *See Bryan v. United States*, 524 U.S. 184, 191-92 (1998).

A false statement to Probation must also be material for the obstruction enhancement to apply. Obstruction includes "providing materially false information to a probation officer in respect to a presentence or other investigation for the court." *See* § 3C1.1, application note 4(H). By contrast, Section 3C1.1 does not apply to "providing incomplete or misleading information, not amounting to a material falsehood, in respect to a presentence investigation." *See id.* at 5(C). A statement is material where "if believed, [the statement] would tend to influence or affect the issue under determination." *See* § 3C1.1, application note 6.

The Court should remand for resentencing for two reasons. First, the district court made no findings of fact that would explain its

application of the obstruction enhancement.  Nor could the district court

rely on the PSR because that report was silent on the only theory of

obstruction advanced at sentencing.  Remand is appropriate to allow

the district court to provide its reasoning for the Court's review.

Second, any finding that Mr. Walshe willfully made a material false

statement on his financial affidavit is clearly erroneous.

### A. Remand is appropriate to give the district court an opportunity to explain the basis for its guidelines calculation.

A sentencing court must articulate the basis for its findings of fact

"to the extent necessary to permit effective appellate review."  *See*

*Zehrung*, 714 F.3d at 632 (quoting *United States v. Van*, 87 F.3d 1, 3

(1st Cir. 1996)).  Where, as here, the defendant objects to an obstruction

enhancement, the district court "must review the evidence and make

independent findings necessary to establish a willful impediment to or

obstruction of justice, or an attempt to do the same."  *See United States*

*v. Dunnigan*, 507 U.S. 87, 95 (1993).  If this Court is unable to

determine the basis for the district court's guidelines calculation, the

appropriate remedy is remand.  *See Zehrung*, 714 F.3d at 632

(remanding to district court for further fact findings on guidelines enhancement).

That is precisely the situation this Court is facing here. The district court stated at Mr. Walshe's sentencing that after "carefully review[ing] all the written materials" and the parties' arguments, it had concluded "pursuant to the sentencing guideline procedures, that it is appropriate to add 2 levels for obstruction of justice." JA99. That is the entirety of the court's finding. The district court did not explain which statement it believed was false and did not say why any purported misstatement was made willfully or whether it was material. And the court did not explain why it was rejecting Mr. Walshe's arguments to the contrary.

Nor does the PSR provide any further explanation. A sentencing court can rely on undisputed portions of the PSR. *See* Fed. R. Crim. P. 32(i)(3)(A). But the PSR is of no assistance here because it says nothing about the dispute facing the district court at sentencing. *See Zehrung*, 714 F.3d at 631-32 (remanding for further fact finding when PSR relied on other grounds for sentencing enhancement and enhancement was not inevitable on the record). Probation's theory of obstruction relied on

the government's allegation that Mr. Walshe did not disclose certain assets he transferred to his wife. SA60. The government dropped that theory before sentencing. ECF No. 178 at 3. The PSR says nothing about the theory the government relied on at sentencing, *i.e.*, whether Mr. Walshe was required to disclose the assets or liabilities of his father's estate.

The record leaves a number of important unanswered questions. What information did the district court find Mr. Walshe failed to disclose? Was it that Mr. Walshe held some of the estate's assets in his custody? Or was it that Mr. Walshe spent some of those assets on the estate's expenses? Or, yet another possibility, did the district court think that Mr. Walshe once believed that he would inherit some of his father's estate and that he therefore had to disclose that now-extinguished hope? What facts led the district court to conclude that any purported misstatement was willful? Did the district court find that assets Mr. Walshe previously held in a representative capacity could be useful in evaluating his ability to pay a criminal penalty? Even though those assets were no longer in his custody and he would never inherit them? If so, why? And did the district court find that any

of those assets in fact could have been used to pay any financial penalties it imposed?

## B. Any finding that Mr. Walshe obstructed justice is clearly erroneous.

Even if the district court had stated its findings on the record, those findings are not supported by the record. First, Mr. Walshe made no false statements on his financial affidavit. Second, even if excluding assets Mr. Walshe may have held as Personal Representative of the estate was incorrect, it was not a willful misstatement. And finally, Mr. Walshe's omission of the estate's assets or his potential liability to the estate was not material to Probation's investigation of his ability to pay any financial penalties.

### 1. Mr. Walshe made no false statements on his financial affidavit.

There is no basis in the record to find that Mr. Walshe made a false statement on his financial affidavit to Probation. The government tried out a number of obstruction theories throughout its lengthy post-plea investigation of Mr. Walshe. But it abandoned each of those theories by the time of sentencing, except one. At the final sentencing hearing the government claimed that Mr. Walshe "obtained money and assets from his father's estate" that he failed to disclose. JA94. That

argument, too, lacked any basis on the face of the financial affidavit, the PSR, or in the parties' stipulation of facts.

Notably, Probation did not take the position that Mr. Walshe's financial statement included false statements or omissions concerning his father's estate. The PSR is silent as to any assets Mr. Walshe managed in his role as Personal Representative of the estate. To be sure, the PSR generally contends that Mr. Walshe did not disclose all of his assets and liabilities. SA38. But the only example the PSR gives has nothing to do with the estate of Mr. Thomas Walshe. The sole example Probation cites is an allegation that Mr. Walshe did not report a transfer of funds to his wife. SA60. The government dropped that allegation by the time of the final sentencing hearing. ECF No. 178 at 3.

The instructions of the financial statement do not put Mr. Walshe on notice that he was required to disclose the estate's assets. The instructions call for "a complete listing of all assets you own or control as of this date and any assets you have transferred or sold since your arrest." SA13. The instructions then go on to further explain what assets must be disclosed. First the instructions describe the purpose of

the disclosure. The "assets owned, jointly owned, or controlled by an offender, and liabilities are all relevant to the court's decision regarding the ability to pay." SA13. The natural reading of this instruction is that Probation is requesting information about assets or liabilities, whether owned or controlled by the defendant, that could be used to pay any financial penalties the Court may impose at sentencing. Assets "controlled" by a defendant in a purely representative capacity – that is, assets that are <u>not</u> available to pay any financial penalties – are not responsive to this instruction.

The instructions go on to delineate the kinds of assets or debts that must be disclosed. They include (1) "assets or debts that are yours alone," (2) "assets or debts that are jointly [ ] held by you and a spouse or significant other," (3) "assets or debts that are held by a spouse or significant other [ ] that you enjoy the benefits of or make occasional contributions toward," and (4) "assets or debts that are held by a dependent [ ] that you enjoy the benefits of or make occasional contributions toward." SA13. The assets Mr. Walshe held in his capacity as Personal Representative of the estate do not fall under any of these categories. They are not individual assets that are "yours"

because they did not belong to Mr. Walshe. Nor were they assets held jointly with his wife. And they were not assets held by anyone else for Mr. Walshe's benefit. In short, the instructions do not put Mr. Walshe on notice that any assets he previously controlled in a representative capacity must be disclosed.

Nor do any of the specific questions on the financial affidavit request information about assets Mr. Walshe held as Personal Representative of his father's estate and which, by the time he signed the affidavit, he had no hope of ever inheriting for his personal use. The only question on the affidavit that references estates is a question about anticipated assets, which include "any assets you expect to receive or control from lawsuits for compensation or damages, profit sharing, pension plans, inheritance, wills, or as an executor or administrator of any succession or estate." SA16. That question is forward-looking. It seeks information about assets that a defendant believes he will obtain in the future, including as an executor or administrator of an estate. When Mr. Walshe signed the financial affidavit he did not anticipate receiving any inheritance or controlling any estate assets as executor or administrator. He had already been

removed as Personal Representative after the probate court recognized a will disinheriting him.  There is no question on the form relating to potential future liabilities.

Moreover, the financial statement's specific question about transfers of assets did not request information about transfers of assets made on behalf of anyone other than the defendant.  That section requests "any assets you have transferred or sold since the date of your arrest with a cost or fair market value of more than $1000.00.  Also list any assets that someone else is holding on your behalf."  SA17.  Mr. Walshe demonstrated that he understood this question to seek transfers of his assets or assets held on his behalf.  He truthfully disclosed the sole asset he personally received as a result of his father's death, namely approximately $40,000 in proceeds of a life insurance police held by his father.  It is reasonable to interpret this question to refer to transfers on behalf of the defendant, whether caused by the defendant or by someone else, rather than transfers a defendant made on behalf of someone else.

The government attempted to dismiss Mr. Walshe's representative capacity as a mere "nicet[y]" at sentencing, JA94, but it identified no

provision of the financial affidavit that required Mr. Walshe to disclose assets he previously held in a representative capacity for the estate.

Although the government insists that "there are money and assets which are gone," JA94, Mr. Walshe had a perfectly legitimate reason to use money from the estate to pay estate expenses. As the government acknowledged in the parties' stipulation of facts, Mr. Walshe told the probate court that he incurred certain expenses on behalf of the estate, such as paying to have his father's remains sent home from India and repairing flood damage to real property owned by the estate. JA50. The government has not suggested that Mr. Walshe did not pay those expenses or that they were not legitimate expenses of the estate. Payment of expenses for the estate does not convert those expenses to an asset of Mr. Walshe's.

Instead, where the financial statement required disclosure of his assets, Mr. Walshe did so. For example, when asked about any transfer of assets, Mr. Walshe truthfully reported transferring to his wife the approximately $40,000 he received from his father's life insurance.

In sum, nothing in the financial statement would have put Mr. Walshe on notice that he should disclose assets he previously held as

Personal Representative of his father's estate and which he knew he would not inherit. And there is no evidence that he would have withheld that information if it was required. There is no basis in the record to find that Mr. Walshe made a false statement on his financial statement. Any finding to the contrary is clearly erroneous.

2. <u>If Mr. Walshe did misstate any of assets on his financial affidavit, he did not do so willfully.</u>

The presentencing investigation should not be a trap for the unwary defendant who endeavors to provide truthful information. Imperfect information that is the result of "confusion, mistake, or faulty memory" is not a willful attempt to obstruct justice. *See* U.S.S.G. § 3C1.1, application note 2. The record here is insufficient to support a finding of willfulness for two reasons. Second, even if the district court had explained its reasoning, a finding that Mr. Walshe acted willfully would have been clearly erroneous. Finally, this case presents the Court with an opportunity to decide the open question of whether the obstruction enhancement only applies upon a showing of specific intent. On remand, the Court should instruct the sentencing court to apply a specific intent standard.

The only facts before the Court related to the government's theory that Mr. Walshe failed to disclose assets or liabilities of his father's estate are (1) the facts the parties agreed to in the stipulation of fact and (2) the financial affidavit itself. It was clear error to find that Mr. Walshe willfully withheld information or misstated his assets on the facts laid out in those documents.

The contention that Mr. Walshe willfully withheld information about his financial condition lacks any record support in the parties' stipulation. The parties do not dispute that Mr. Walshe was the Personal Representative of his father's estate and was later removed from that position after a will emerged showing that he had been disinherited. JA49-50. And the parties agree that Mr. Walshe did not report assets he received as Personal Representative of the estate on his financial statement. JA49. Additionally, the parties stipulated that Mr. Walshe did disclose to Probation approximately $40,000 he received from a life insurance policy held by his father for which Mr. Walshe was the beneficiary. JA49-50. That is to say, Mr. Walshe did disclose the asset that belonged to him personally. None of those facts support a finding that Mr. Walshe willfully withheld information from Probation,

as opposed to omitting information out of mistake or confusion where the affidavit did not clearly seek information about assets belonging to others.

The financial affidavit itself directly undermines any conclusion that Mr. Walshe's failure to disclose was willful.  There are no questions on the affidavit that clearly ask about assets previously held in a representative capacity and which the defendant has no hope of ever owning.  The only question that mentions assets held as the administrator of an estate is limited to anticipated assets.  SA16.  There is no question that Mr. Walshe did not anticipate receiving anything from his father's estate when he signed the affidavit.  And Mr. Walshe was not the Personal Representative of the estate when he submitted his financial information to Probation.  Accordingly, his truthful response to that question was "none."  SA16.

Additionally, a reasonable reader of the affidavit's instructions would understand that the form seeks information about assets or liabilities that are pertinent to the defendant's ability to pay a financial penalty.  The instructions specifically identify "the court's decision regarding the ability to pay" as the reason for obtaining the defendants'

financial information.  SA13.  And the examples given in the instructions likewise confirm that Probation is interested in assets or liabilities that could be used to determine what the defendant is able to pay.  Where the instructions seek assets or debts held by others, it specifies that Probation is looking for those assets or liabilities "that you enjoy the benefits of or make occasional contributions toward." SA13.  It does not ask about assets held by others that do not benefit Mr. Walshe.  And it does not ask about assets that Mr. Walshe would not be permitted to contribute towards any criminal financial penalties imposed on him.  The most natural reading of the instructions is that only assets or liabilities that impact Mr. Walshe's ability to pay should be disclosed.

Mr. Walshe's responses reflect his reasonable interpretation that he was being asked to disclose assets or liabilities that could impact his ability to pay.  When asked about transfers of assets, he accurately reported the $40,000 life insurance policy he received upon his father's death.  SA17.  That is to say, when Mr. Walshe benefitted from an asset he reported it.  When he had no hope of benefiting from an estate he no longer controlled, he did not report it.  That is a logical approach to the

questions on the financial affidavit, and not a basis for finding willful failure to disclose.

Finally, this Court should ask the district court to determine on remand whether Mr. Walshe specifically intended to misstate his assets or liabilities. The Seventh Circuit has interpreted willful obstruction to require "a specific intent to obstruct justice." *See United States v. Barker*, 80 F.4th 827, 835 (7th Cir. 2023). Obstruction of justice is typically understood to require "purpose, or specific intent." *See United States v. Schneiderhan*, 404 F.3d 73, 82 (1st Cir. 2005). Yet whether willful obstruction of justice in the context of the sentencing guidelines requi7res that the defendant specifically intended to obstruct justice is an open question in this circuit. The Court has previously declined to consider this question in cases where the "'evidence clearly supports the district court's ultimate' obstruction of justice finding." *See United States v. Rivera-Nazario*, 68 F.4th 653, 661-62 (1st Cir. 2023) (quoting *United States v. Hall*, 434 F.3d 42, 61-62 (1st Cir. 2006)). This case is an opportune occasion for the Court to address that question because the record here offers no evidence that Mr. Walshe specifically intended to misstate his assets or liabilities.

## C. Any alleged misstatements on Mr. Walshe's financial affidavit were not material.

The record here also lacked support for any finding that any misstatements on Mr. Walshe's financial affidavit were material. The guidelines distinguish between "providing materially false information to a probation officer" (which is obstruction when done willfully) and "providing incomplete or misleading information, not amounting to a material falsehood" (which is not obstruction). *Compare* U.S.S.G. § 3C1.1 application note 4(H) *with id.* at note 5(C). A material statement or information means a statement or information that "if believed, would tend to influence or affect the issue under determination." *Id.* at note 6. Although that test is not a high bar, there is nothing on the record here that lends support to a finding of materiality. Without more, it was clear error for the district court to find a material misstatement in Mr. Walshe's financial affidavit.

The materiality of information provided to probation is evaluated in the context of each particular case. *See United States v. Tabares*, 951 F.2d 405, 411 (1st Cir. 1991) (finding false social security number defendant provided probation could not have impeded investigation where it was the number defendant actually used); *see also United*

*States v. Belletiere*, 971 F.3d 961, 968 (3d Cir. 1992) (finding misstatement not material to Probation's investigation "in this particular case"). Here, information that is not relevant to Mr. Walshe's ability to pay a criminal penalty is not material to Probation's presentence investigation.

As an initial matter, in the plea agreement the parties jointly agreed to recommend the same amount of restitution and forfeiture. Neither party relied on Mr. Walshe's financial condition to argue for more than those amounts or less than those amounts.

Assets that Mr. Walshe only held in a representative capacity and that he had no hope of ever owning personally had no bearing on his ability to pay a criminal penalty for the simple reason that those assets do not belong to Mr. Walshe. *See United States v. Carroll*, 346 F.3d 744, 748-49 (7th Cir. 2003) (finding application of obstruction enhancement improper where misrepresentation had no impact on defendant's forfeiture liability). A criminal penalty is imposed on the defendant and only the defendant. The government cannot, for example, seize assets of nonparties to satisfy a forfeiture judgment. *See United States v. Saccoccia*, 354 F.3d 9, 15 (1st Cir. 2003) ("Forfeiture is an *in personam*

criminal remedy targeted primarily at the defendant who committed the criminal offense.").  And the sentencing court cannot order a third party to pay a criminal penalty in a case where they have not been charged or convicted.

If the government's theory is correct, then any defendant who served as a fiduciary would be required to disclose funds held in custody for others.  For example, an attorney charged with a crime would have to disclose the contents of his client trust account and all expenditures over $1,000 he made from it, even though it is crystal clear that those funds are not the attorney's personally to spend or use.  A sentencing court would not have the ability to order the attorney to use those client funds to pay any criminal judgment.  And the attorney defendant would be committing a grave act of professional malpractice (not to mention theft) if he tried to use client funds to pay his personal criminal judgment.

So too with Mr. Walshe.  He was not free to use any assets of his father's estate to pay criminal penalties in this case.  And when he signed the financial affidavit it was clear that he would never be free to use estate assets to satisfy the court's judgment.  Nor would the estate's

assets be used for the benefit of Mr. Walshe.  By then he knew he had been disinherited.  The district court's analysis of Mr. Walshe's ability to pay would not have been any different even if he had made a full disclosure to Probation of his father's estate.  Accordingly, that information was not material and Mr. Walshe did not obstruct justice when he failed to disclose it.

## III.   The district court's decision will have a chilling effect on presentence investigations.

If the district court's application of the obstruction enhancement here stands, Probation will encounter difficulties in getting financial disclosures in future cases.  If the financial disclosure form is susceptible to the extremely overbroad reading adopted by Probation here, defense attorneys will be hesitant to advise clients to make a financial disclosure at all.  It would be the safer course for defendants to simply decline to participate in the financial investigation.  After all, invoking the right against self-incrimination is plainly not obstruction of justice.  *See* U.S.S.G. § 3C1.1, application note 2 ("This provision is not intended to punish a defendant for the exercise of a constitutional right.  A defendant's . . . refusal to admit guilt or provide information to a probation officer . . . is not a basis for application of this provision.").

Disclosure would be the riskier choice if failure to read the disclosure form in the same way that Probation does could increase a client's guidelines range.

It would be a bad result if defendants were increasingly hesitant to disclose their assets. It would make it more difficult for courts to accurately assess a defendant's ability to pay. And it would make it more difficult for the government to identify potentially forfeitable assets. That result can be avoided if the Court makes clear that good faith efforts to comply do not obstruct justice.

## CONCLUSION

Defendant-Appellant Brian Walshe respectfully requests that the Court vacate his sentence and remand for a new sentencing hearing.

BRIAN WALSHE,
By his attorneys,

/s/ *Tracy A. Miner*
Tracy A. Miner
Megan A. Siddall
Miner Siddall LLP
101 Federal Street, Suite 650
Boston, MA  02110
Telephone: (617) 202-5890
Fax:  (617) 202-5893

Email:  tminer@msdefenders.com
Email:  msiddall@msdefenders.com

Dated:  July 18, 2024

**CERTIFICATION OF COMPLIANCE**

Under Fed. R. App. P. 32(g), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i).

1.      Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 7,609 words.

2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.  As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Megan A. Siddall
Megan A. Siddall

Dated:  July 18, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served by ECF on counsel for the government on July 18, 2024.


/s/ Megan A. Siddall
Megan A. Siddall

No. 24-1219

# UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

UNITED STATES,

*Appellee,*

*v.*

BRIAN R. WALSHE,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of Massachusetts
(Case No. 1:18-cr-10399-WGY), Judge William G. Young

## ADDENDUM

Tracy A. Miner
Megan A. Siddall
Miner Siddall LLP
101 Federal Street, Suite 650
Boston, MA 02110
Telephone: (617) 202-5890
Fax: (617) 202-5893
tminer@msdefenders.com
msiddall@msdefenders.com

*Counsel for Appellant*
*Brian Walshe*

July 18, 2024

## Table of Contents

Page

Judgment, filed February 28, 2024 (Docket No. 185) ....................ADD1

U.S.S.G. § 3C1.1 ...............................................................................ADD12

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

### District of Massachusetts

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | ) | |
| | ) | |
| BRIAN R. WALSHE | ) | Case Number: **1  18  cr  10399  - 001  - WGY** |
| | ) | USM Number:  00956-138 |
| | ) | |
| | ) | Tracy A. Miner |
| | ) | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)   1, 2 and 4

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC § 1343 | Wire Fraud | 11/30/16 | 1 |
| 18 USC § 2314 | Interstate Transportation for a Scheme to Defraud | 11/07/16 | 2 |
| 18 USC § 1957 | Unlawful Monetary Transaction | 11/07/17 | 4 |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☑ Count(s)   3   ☑ is   ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

2/20/2024
Date of Imposition of Judgment

/s/ William G. Young
Signature of Judge

The Honorable William G. Young
Judge, U.S. District Court
Name and Title of Judge

2/28/2024
Date

**ADD1**

AO 245B (Rev.02/18)  Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page  2  of  7

DEFENDANT:  BRIAN R. WALSHE
CASE NUMBER:  1  18  cr  10399  - 001 - WGY

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:  37  month(s)

on each count; each count to run concurrently with each other.

☐  The court makes the following recommendations to the Bureau of Prisons:

☑  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at _____ ☐ a.m. ☐ p.m.  on _____ .

    ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on _____ .

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

# ADD2

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __3__ of __7__

DEFENDANT:   BRIAN R. WALSHE
CASE NUMBER:   **1  18  cr  10399  - 001 - WGY**

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :          **36**   month(s)

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
         ☑ The above drug testing condition is suspended, based on the court's determination that you
              pose a low risk of future substance abuse. *(check if applicable)*
4.   ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
5.   ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq*.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
6.   ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

**ADD3**

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
    Sheet 3A — Supervised Release

| | Judgment—Page | 4 | of | 7 |

DEFENDANT:  BRIAN R. WALSHE
CASE NUMBER:  **1 18 cr 10399 - 001 - WGY**

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature  _____    Date _____

**ADD4**

AO 245B(Rev. 02/18)   Judgment in a Criminal Case
Sheet 3D — Supervised Release

DEFENDANT:   BRIAN R. WALSHE
CASE NUMBER:   1  18  cr   10399   - 001 - WGY

Judgment—Page ___5___ of ___7___

## SPECIAL CONDITIONS OF SUPERVISION

1. You must pay the balance of any fine or restitution imposed according to a court-ordered repayment schedule.

2. You are prohibited from incurring new credit charges or opening additional lines of credit without the approval of the Probation Office while any financial obligations remain outstanding.

3. You must provide the Probation Office access to any requested financial information, which may be shared with the Financial Litigation Unit of the U.S. Attorney's Office.

4. You must participate in a mental health treatment program as directed by the Probation Office.

5. You shall be required to contribute to the costs of evaluation, treatment, programming, and/or monitoring (see Special Condition # 4), based on the ability to pay or availability of third-party payment.

**ADD5**

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page __6__ of __7__

DEFENDANT:   BRIAN R. WALSHE
CASE NUMBER:   1 18 cr 10399 - 001 - WGY

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $ 300.00 | $ | $ | $ 475,000.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Victim 1 | | $50,000.00 | |
| Victim 2 | | $280,000.00 | |
| Victim 3 | | $145,000.00 | |
| | | | |
| | | | |
| | | | |
| | | | |
| **TOTALS** | $ 0.00 | $ 475,000.00 | |

☐ Restitution amount ordered pursuant to plea agreement   $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**ADD6**

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page ___7___ of ___7___

DEFENDANT:   BRIAN R. WALSHE
CASE NUMBER:   1 18 cr 10399 - 001 - WGY

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☑  Lump sum payment of $  300.00  due immediately, balance due

- ☐  not later than _____ , or
- ☑  in accordance with ☐ C, ☐ D, ☐ E, or ☑ F below; or

B  ☐  Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☑  Special instructions regarding the payment of criminal monetary penalties:

> Payment of the restitution shall begin immediately and shall be made according to the requirements of the Federal Bureau of Prisons' Inmate Financial Responsibility Program while the defendant is incarcerated and according to a court-ordered repayment schedule during the term of supervised release.
>
> A payment in the amount of $95,077.97 has already been paid.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☑  The defendant shall forfeit the defendant's interest in the following property to the United States:

Forfeiture is ordered as prayed for by the government (see docket entries 113, 140 and 163).

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

## ADD7

```
 1                    UNITED STATES DISTRICT COURT

 2                   DISTRICT OF MASSACHUSETTS (Boston)

 3
                                        18cr10399-wgy-1
 4

 5

 6

 7

 8     ***********************************
                                         *
 9     United States vs. Brian Walshe    *   JUDGE'S FINDINGS
                                         *
10     ***********************************

11

12

13

14

15        BEFORE:  Honorable Judge William G. Young

16

17

18
                       Richard H. Romanow
19                    Official Court Reporter
                   United States District Court
20                      1 Courthouse Way
                   Boston, Massachusetts 02210
21
                   Tuesday, February 20, 2024
22

23

24

25
```

1        THE COURT:  Mr. Brian Walshe, in consideration of

2    the provisions of 18 United States Code, Section

3    3553(a), the information from the United States

4    Attorney, your attorney, the probation office, and

5    yourself, this Court sentences you to 13 -- strike that,

6    sentences you to 37 months on each of the counts of

7    conviction, the sentence on each count of conviction to

8    run concurrent, one with the other, and concurrent with

9    any state sentence if any state sentence should

10   eventuate.  The Court imposes --  and to be followed by

11   3 years of supervised release with all the general and

12   special conditions of supervised release set forth in

13   the presentence report.

14       The Court imposes no fine due to your inability to

15   pay a fine.  The Court imposes restitution of $475,000

16   and credits you with payment toward that restitution of

17   $95,077.97.  Let me explain this sentence.

18       The primary driver of this sentence for art fraud

19   is the necessity for deterrence in a situation where

20   fraud is not uncommon, hard to detect, and it is

21   important in the eyes of this Court that those who

22   engage in it be deterred, and so it is general

23   deterrence that this Court, um, is basing the sentence

24   on.

25       I do credit you with those efforts you have made

1  subsequent to your arrest with respect to this art fraud

2  case, but it is the view of this Court that such a

3  sentence is sufficient but not greater than necessary to

4  accomplish the goals of the criminal justice system.

5         Now you have the right to appeal from any findings

6  or rulings the Court has made against you.  Should you

7  appeal and should your appeal be successful in whole or

8  in part and the case remanded, you'll be resentenced

9  before another judge.  Ms. Miner, if an appeal is

10  decided upon and you want transcript, seek it from this

11  session of the court because I'll turn it around right

12  away.

13         Do you understand?

14         MS. MINER:  Yes, your Honor, thank you.

15         THE COURT:  Now he's in state custody and having

16  announced that sentence, I think I should remand him to

17  the custody of the state?

18         MR. MORAN:  He returns back to the state pursuant

19  to the writ of habeas corpus ad prosequendum.  My only

20  request, your Honor, is that Judge Woodlock issued

21  orders of forfeiture, which you include those in the

22  judgment, and those are Documents 140, 113, and 163.

23         THE COURT:  Those will be included in the

24  judgment.  That's the order of the Court.  We'll recess.

25         THE CLERK:  All rise.

1          (Ends,  3:15 p.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

United States Code Annotated
   Federal Sentencing Guidelines (Refs & Annos)
    Chapter Three. Adjustments (Refs & Annos)
     Part C. Obstruction and Related Adjustments (Refs & Annos)

USSG, § 3C1.1, 18 U.S.C.A.

## § 3C1.1. Obstructing or Impeding the Administration of Justice

Currentness

If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

### CREDIT(S)

(Effective November 1, 1987; amended effective November 1, 1989; November 1, 1990; November 1, 1991; November 1, 1992; November 1, 1993; November 1, 1997; November 1, 1998; November 1, 2002; November 1, 2004; November 1, 2006; November 1, 2010; November 1, 2011; November 1, 2014; November 1, 2018; November 1, 2023.)

### COMMENTARY

<**Application Notes:**>

<**1. In General.--**This adjustment applies if the defendant's obstructive conduct (A) occurred with respect to the investigation, prosecution, or sentencing of the defendant's instant offense of conviction, and (B) related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) an otherwise closely related case, such as that of a co-defendant. Obstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction.>

<**2. Limitations on Applicability of Adjustment.--**This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision. In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.>

<**3. Covered Conduct Generally.--**Obstructive conduct can vary widely in nature, degree of planning, and seriousness. Application Note 4 sets forth examples of the types of conduct to which this adjustment is intended to apply. Application Note 5 sets forth examples of less serious forms of conduct to which this adjustment is not intended to apply, but that ordinarily can appropriately be sanctioned by the determination of the particular sentence within the otherwise applicable guideline range. Although the conduct to which this enhancement applies is not subject to precise

definition, comparison of the examples set forth in Application Notes 4 and 5 should assist the court in determining whether application of this adjustment is warranted in a particular case.>

<**4. Examples of Covered Conduct.--**The following is a non-exhaustive list of examples of the types of conduct to which this adjustment applies:>

<**(A)** threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so;>

<**(B)** committing, suborning, or attempting to suborn perjury, including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction;>

<**(C)** producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding;>

<**(D)** destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (e.g., shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), or attempting to do so; however, if such conduct occurred contemporaneously with arrest (e.g., attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it results in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender;>

<**(E)** escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding;>

<**(F)** providing materially false information to a judge or magistrate judge;>

<**(G)** providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense;>

<**(H)** providing materially false information to a probation officer in respect to a presentence or other investigation for the court;>

<**(I)** other conduct prohibited by obstruction of justice provisions under title 18, United States Code (e.g., 18 U.S.C. §§ 1510, 1511);>

<**(J)** failing to comply with a restraining order or injunction issued pursuant to 21 U.S.C. § 853(e) or with an order to repatriate property issued pursuant to 21 U.S.C. § 853(p);>

<**(K)** threatening the victim of the offense in an attempt to prevent the victim from reporting the conduct constituting the offense of conviction.>

<This adjustment also applies to any other obstructive conduct in respect to the official investigation, prosecution, or sentencing of the instant offense where there is a separate count of conviction for such conduct.>

<**5. Examples of Conduct Ordinarily Not Covered.--**Some types of conduct ordinarily do not warrant application of this adjustment but may warrant a greater sentence within the otherwise applicable guideline range or affect the determination of whether other guideline adjustments apply (e.g., § 3E1.1 (Acceptance of Responsibility)). However, if the defendant is convicted of a separate count for such conduct, this adjustment will apply and increase the

**ADD13**

offense level for the underlying offense (i.e., the offense with respect to which the obstructive conduct occurred). See Application Note 8, below.>

<The following is a non-exhaustive list of examples of the types of conduct to which this application note applies:>

<**(A)** providing a false name or identification document at arrest, except where such conduct actually resulted in a significant hindrance to the investigation or prosecution of the instant offense;>

<**(B)** making false statements, not under oath, to law enforcement officers, unless Application Note 4(G) above applies;>

<**(C)** providing incomplete or misleading information, not amounting to a material falsehood, in respect to a presentence investigation;>

<**(D)** avoiding or fleeing from arrest (see, however, § 3C1.2 (Reckless Endangerment During Flight));>

<**(E)** lying to a probation or pretrial services officer about defendant's drug use while on pre-trial release, although such conduct may be a factor in determining whether to reduce the defendant's sentence under § 3E1.1 (Acceptance of Responsibility).>

<**6. "Material" Evidence Defined.--**"Material" evidence, fact, statement, or information, as used in this section, means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination.>

<**7. Inapplicability of Adjustment in Certain Circumstances.--**If the defendant is convicted for an offense covered by § 2J1.1 (Contempt), § 2J1.2 (Obstruction of Justice), § 2J1.3 (Perjury or Subornation of Perjury; Bribery of Witness), § 2J1.5 (Failure to Appear by Material Witness), § 2J1.6 (Failure to Appear by Defendant), § 2J1.9 (Payment to Witness), § 2X3.1 (Accessory After the Fact), or § 2X4.1 (Misprision of Felony), this adjustment is not to be applied to the offense level for that offense except if a significant further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction offense itself (e.g., if the defendant threatened a witness during the course of the prosecution for the obstruction offense).>

<Similarly, if the defendant receives an enhancement under § 2D1.1(b)(16)(D), do not apply this adjustment.>

<**8. Grouping Under § 3D1.2(c).--**If the defendant is convicted both of an obstruction offense (e.g., 18 U.S.C. § 3146 (Penalty for failure to appear); 18 U.S.C. § 1621 (Perjury generally)) and an underlying offense (the offense with respect to which the obstructive conduct occurred), the count for the obstruction offense will be grouped with the count for the underlying offense under subsection (c) of § 3D1.2 (Groups of Closely Related Counts). The offense level for that group of closely related counts will be the offense level for the underlying offense increased by the 2-level adjustment specified by this section, or the offense level for the obstruction offense, whichever is greater.>

<**9. Accountability for § 1B1.3(a)(1)(A) Conduct.--**Under this section, the defendant is accountable for the defendant's own conduct and for conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused.>

Notes of Decisions (1125)

**ADD14**

Federal Sentencing Guidelines, § 3C1.1, 18 U.S.C.A., FSG § 3C1.1
As amended to 3-15-22.

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**ADD15**